the law of 1807; to support which, he produced a survey dated the 2d day of September, 1808; an entry made in pursuance of the survey, on the 1st day of December, 1810 [and a grant thereon, dated the 3d day of Dec., 1810].[2] It was admitted that the defendant lived within the bounds of both the claims; and that on the 12th day of September, 1807, he was seated on and in actual possession of the land in dispute.

Upon the trial, two questions were agitated—1. As the entry of the plaintiff was older than either the grant or entry of the defendant, whether the defendant's previous survey and right of occupancy had so appropriated the land that it could not be entered. 2. Whether the legislature of Tennessee had authority to pass the law of 1807, giving a preference to occcupants, as against claims founded upon military warrants.

The land lies within the military reservation.

Mr. Dickinson, for plaintiff.
Mr. Whiteside, for defendant.

M'NAIRY, District Judge (absent TODD, Circuit Justice). For the purpose of showing that the legislature of Tenneesee were unauthorized to pass the occupant law of 1807, the counsel for the lessors of the plaintiff have relied upon the cession act, which contains these words: "The lands laid off, or directed to be laid off, by any act or acts of the general assembly of this state, for the officers and soldiers thereof, their heirs and assigns respectively, shall be and enure to the use and benefit of said officers, their heirs and assigns respectively." Hayw. Rev. 165. It is contended that this clause in the cession act, connected with the compact between this state and North Carolina, prohibited this state from passing the act of 1807. The compact before alluded to authorizes the state of Tennessee to issue grants in such cases only as could have been done by North Carolina under the cession act. The compact also declares that in entering and obtaining titles to lands. no preference shall be given to the citizens of Tennessee over the citizens of any other state. claiming under North Carolina; "nor shall any occupancy or possession give preference in entering and obtaining titles, so as to injure or take away the right of any person claiming by entry, grant, or otherwise, under North Carolina."

The law of 1807 provides, that it shall be lawful for any person. who was seated on any vacant and ungranted land, on the 12th day of September, 1807, to have a preference for the term of two years to enter the same, provided such person caused it to be surveyed within nine months after the passing of the act, which was on the 2d day of December, in that year. I do not believe that the reservation of the land, in this section of coun-

try, can be considered alone as an appropriation. The lands still remain vacant, until the application of a warrant to some particular spot. The holder of a warrant has only a floating claim, and cannot be considered as having an appropriation, unless he goes on to designate by survey, etc., the locality of the particular tract he wishes to affix his warrant to. Under this view of the case I cannot but believe that the state of Tennessee had a right to pass the law in question.

The next question which occurs is, whether the survey and right of preference of the defendant so appropriated the land as to render it not liable to be entered by the plaintiff's military warrant. The entry laws, under which the plaintiff's entry was made, only authorize the entering of vacant and unappropriated land. When an actual settlement has been made in pursuance of the act of 1807, and the enterer has gone on to make a survey, I do not consider the land as being vacant, within the true sense and meaning of the entry laws. I am therefore of opinion that although the plaintiff has produced an entry, older in date than the entry of the defendant, yet as the defendant's right of preference existed, and his survey was made when the plaintiff had only a warrant. not located anywhere, the land was from thence no longer vacant, and consequently not subject to be entered by the plaintiff. Whether the entry of the plaintiff, under those circumstances, can be declared void in a court of law is perhaps doubtful. I am inclined to think it cannot. But this is not made a question in the cause. It seems to be admitted that if in any court this would be the result, a verdict at law may pass against him

Verdict for the defendant.

---

## Case No. 2,464.

### CARSON v. JENNINGS.

[1 Wash. C. C. 129.][1]

Circuit Court, D. Pennsylvania. April Term, 1804.[2]

ADMIRALTY JURISDICTION OF THE DISTRICT COURT —LACHES.

1. The district court of Pennsylvania, exercising admiralty jurisdiction. cannot proceed against a captor, into whose hands the proceeds of the capture have never arrived; the same being in the hands of the officer of another court, in another state.

2. A court of admiralty can only proceed in rem, against the thing itself; or quasi in rem, against the proceeds thereof.

3. The execution of the sentence of a superior court, can only be by a court of admiralty hav-

[1] [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]
[2] [Reversing an unreported decree of the district court. Decree of the circuit court affirmed by supreme court in Jennings v. Carson, 4 Cranch (8 U. S.) 2.]

ing the thing, which is ordered to be restored, within its power.

4. The captured, who has omitted to enforce a decree of a superior court, reversing the decree of a court of admiralty; cannot claim, as damages, the loss he may have sustained, by a depreciation of the funds in which the proceeds of the capture may be invested. He should have applied to the court below, to enforce the decree of the court of appeals; and, omitting so to do, the loss will fall upon him.

[Cited in Baker v. Biddle, Case No. 764.]

[Appeal from the district court of the United States for the district of Pennsylvania.]

In admiralty. This was an appeal from the district court of Pennsylvania. A libel was filed in that court, by William Downing Jennings, late owner and proprietor of the sloop George, and her cargo; against Joseph Carson, one of the owners of the privateer, called the Addition. The original and supplemental libels state; that the George, with her cargo, being the property of the libellant, was, some time in August, 1778, on the high seas, captured, as prize, by the Addition, Moses Griffin, commander; was carried into New Jersey, where she was libelled, in the court of admiralty, and condemned; but, upon an appeal to the court of appeals, in prize causes, that sentence was reversed. The libel, in this cause, contains no specific prayer whatever; but Carson was arrested, and a monition was served on Griffin, the commander of the privateer. Carson, after pleading to the jurisdiction of the court, that this is not a prize court; and, that the jurisdiction of all questions of prize, as to vessels captured during the war, and carried into New Jersey, and the execution of all decrees arising therein, belonged to the court of admiralty of that state, and not to this court; and, further, that the other part owners should be made parties; answered: that, by the sentence of the court of admiralty of New Jersey, given 31st October, 1778, the George and her cargo were condemned as prize, and ordered to be sold, and the proceeds thereof paid over to the owners of the privateer; but, that no part of the proceeds ever was received by the owners, but remained, in money, ever since in the hands of the marshal of the court. Carson, after filing his answer, died; and the suit was revived against his executors; who plead to the jurisdiction of the court to hold plea of a tort, supposed to be committed by their testator. The district court overruled the plea to the jurisdiction of the court, objecting to its competency to determine on prize causes; and as to the question of the legality, equity, and propriety of the court's interference in the present suit, and all other questions, save that to the jurisdiction, the court dismissed the libel. [Case No. 7,281.] This decree was affirmed in the circuit court of Pennsylvania [unreported]; but, upon a writ of error, the supreme court reversed those decrees, so far as they decreed, that the district court

had not jurisdiction to carry into effect, the decree of the court of appeals; and the cause was remanded to the district court;—the defendant in error being at liberty to contend, as matter of defence, on the merits, or to the form of proceeding, that the libel should first have been filed in the district court of New Jersey; but not to make the decision of the judges, on that point, a ground of exception to the jurisdiction of the district court of Pennsylvania. The cause, afterwards coming on in the district court, a decree was pronounced in favour of the libellants, for 33,910 dollars and 75 cents, and costs; being the amount, in specie, of the moneys paid to the marshal of New Jersey, according to the continental scale of depreciation, as established in that state; and interest thereon from the date of the decree of the court of admiralty, until two months after the reversal, and from the time of commencing this suit in the district court, to the final decree. [Case unreported.]

WASHINGTON, Circuit Justice. In the argument of this cause, many points were raised, and debated at considerable length. But, as it may be decided upon its real merits, I shall avoid giving any opinion upon the preliminary points. Whether the district court of this state can, under any circumstances, enforce against the owners of the privateer, residing here, the sentence of the old court of appeals, directed to the court of admiralty of New Jersey; the proceeds of the prize being then, and always afterwards, in the hands of the marshal of that court, under its order; and no part thereof having ever come to the possession of the owners of the privateer; is a great question, which it is not, perhaps, absolutely necessary to decide at this time. But, I shall not conceal the opinion I at present entertain, that the district court of this state cannot, in such a case, grant relief against the person of the owner. Prize causes are always in rem, against the vessel and cargo, or one of them; or quasi in rem against the proceeds, wherever they are. But, when the object of the libel is to execute the decree of the court, the proceedings of the court are limited by the decree, to be enforced against the thing directed to be restored.

I shall now consider the case upon its merits; and the question will be, whether, under the peculiar circumstances attending this, the appellees are entitled to relief against the owners of the privateer. At the threshold, we are at once struck with the antiquity of the demand. The sentence of the court of appeals was pronounced on the 23d of December, 1780, ordering restitution of the George, and her cargo, but without damages; and directing the admiralty court of New Jersey to issue all proper process for executing that sentence. The cause appears to have slept from that period until the year 1790; when it revived, in the form

of a libel, for the value of the vessel and cargo; filed in the district court of Pennsylvania, against the owner of the privateer, and afterwards against the present appellants, his executors. The privateer, and her cargo, had been sold under an order of the court of admiralty of New Jersey, in the year 1778, and the proceeds remained in the hands of the marshal; or, at least, they were never called out by any order of that court. It was fairly asked by the appellants' counsel, why this delay had taken place? and, if no substantial injury had resulted to the appellants by the delay; it might have been well answered, that it was unimportant to account for it. But, the counsel for the appellees have endeavored to account for it, in a manner by no means satisfactory to me. They say, that the states of Pennsylvania and New Hampshire, denied the right of the old court of appeals to take cognizance, by way of appeal, of the decrees of the courts of admiralty of these states. Admit the fact; yet, it does not appear that this point was ever controverted by the state of New Jersey. It is true, that the representatives of that state in congress, voted against the exercise of this right, in the case of the sloop Active; but that vote was overruled by a majority of congress; and, I presume, the vote of the majority was submitted to. But, if the objection I am now considering, be attached to the substantial merits of the case, it is incumbent on the party who would repel it, to show, by clear proof, that an attempt had been made, to have the sentence of the court of appeals executed, by the admiralty court of New Jersey; or, that such an attempt would have been ineffectual. This is not stated in the record, and has only been mentioned in argument. I do not notice the objection with a view to a bar of the remedy, from length of time; but does it materially affect the interest and rights of the appellees? What would have been the situation of Carson, if an application had been made to the admiralty court of New Jersey, to execute the sentence of the court of appeals, as soon as it could have been done? Most clearly, the former would have directed the marshal to pay over the proceeds of the vessel and cargo, then remaining in his hands, to the appellees. If the money for which the vessel and cargo had been sold, had, in the meantime, been diminished in value by depreciation, could that court have gone into any calculations to ascertain the loss; and to fix it upon the shoulders of the captors? I think, clearly not. By what rule could they have graduated the scale of depreciation? Congress had established none at that time; nor do I know that the state of New Jersey had. The loss had resulted from the circumstances of the revolution; which it would have been as invidious, as it would have been mischievous and unpatriotic, for a court of justice to

have admitted, as the consequences of depreciation. Besides, the duty of the court of admiralty was to execute the sentence of the court of appeals; not to new model, and totally to vary it, by decreeing damages, or, an additional sum, in nature of damages, against the captors; which the court of appeals, knowing of the sale, and consequently of the depreciation, had not thought proper to award.

The loss, then, by depreciation, took place either before the sentence of reversal, or afterwards. If before, it was a loss which the appellees must have borne; if they had, as it was their duty to do, applied to the court of admiralty, to carry the sentence of the court of appeals into execution. If so, can they by any act or omission of their own, shift the loss from their own shoulders to those of the appellants, who had no control over their actions? If the loss by depreciation happened afterwards, then the argument against the appellees is still stronger; because they might have obtained the money, of its then value at least; and it would be monstrous to contend, that they could claim all the subsequent loss from the captors, by neglecting to do what they not only might, but what it was their duty to have prevented. If a loss must be sustained by one of these parties, does it consist with the principles of equity, or even strict justice, that he who has caused it, shall fix it upon another; who neither caused it, nor had it in his power to have prevented it? For, it is to be remarked, that it was in the power of the appellees, at any time after the sentence of the court of appeals, to have compelled the payment of the proceeds of vessel and cargo; but the appellants could exercise no power whatever over the subject. It is therefore of no consequence, at what period the loss by depreciation took place. When I consider the object of this libel, as being to enforce execution of the sentence of the court of appeals; I view it in a light most favorable to the strict right of the appellees. The case is too entirely destitute of equity, to stand upon the ground of an original claim for damages.

Upon the whole, I am of opinion, that the decree of the district court should be reversed, and the libel dismissed with costs.

NOTE [from original report]. [From this decree libelants appealed, and] in February 1807, this decree was affirmed in the supreme court. [Jennings v. Carson] 4 Cranch [S U. S.] 2. The supreme court of the United States determined, in this case; 1. That the district courts of the United States, as courts of admiralty jurisdiction, have authority to enforce a decree of the federal court of appeals. 2. The district courts of the United States, are courts of admiralty; and, as no law has regulated their practice, they proceed according to the general rules of the admiralty.